UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aircraft Mechanics Fraternal Association,

Plaintiff,

v.

Northwest Airlines, Inc.,

Defendant,

Civ. File No. 02-756 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO") and Defendant's Motion to Dismiss. For the reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**BACKGROUND**

Plaintiff Aircraft Mechanics Fraternal Association ("AMFA") is a union representing nearly 10,000 mechanics, aircraft cleaners, and custodians employed by Defendant Northwest Airlines, Inc. ("Northwest"). AMFA seeks a TRO to prevent what it terms a "repudiation" of the parties' Collective Bargaining Agreement ("CBA") by Northwest. According to AMFA, Northwest is implementing new FAA rules requiring criminal history background checks in a manner contrary to the CBA and federal law.

After the September 11 terrorist attacks, Congress and the FAA determined that new rules were necessary to ensure the safety of the flying public. To that end, the FAA promulgated regulations requiring criminal history background checks for all airline

APR 16 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 16 2002
DEPUTY CLERK

employees with access to secured areas (called "SIDA" – security identification display areas). These rules require airlines to fingerprint all employees with SIDA access and to submit those fingerprints to the FBI for criminal history checks. If the employee's criminal history from the FBI shows that the employee has committed one of 28 enumerated offenses within the past ten years, the airline is required to suspend that employee's access to SIDA. 49 C.F.R. § 1544.229(c)(2) and (d). The regulations specify that the airlines are to use the information from the criminal history checks "only" to carry out the purposes of the regulations. 49 C.F.R. § 1544.229(j). The background checking process must be completed by December 6, 2002.

AMFA raises three challenges to Northwest's actions. AMFA contends that Northwest has received information from the FBI that goes beyond the 28 enumerated offenses and the ten-year period prescribed by the FAA regulations, and that such receipt is somehow improper. AMFA next argues that Northwest is using the information to terminate employees who do not have one of the 28 offenses within the past ten years. In support of this contention, AMFA submits evidence that four employees with criminal histories other than the 28 offenses who apparently lied about their criminal histories on their employment applications were terminated, allegedly in violation of both the CBA and the explicit mandate of the new regulations. (According to Northwest, two of these four employees were reinstated through the grievance process. The other two have grievances still pending.)

Finally, AMFA asserts that Northwest should not terminate employees whose SIDA access must be suspended, but rather should reassign these employees to non-secure jobs.

**DISCUSSION**

Because Northwest's Motion to Dismiss implicates the Court's jurisdiction to entertain this case, the Court will consider that Motion before turning to AMFA's request for a TRO. In the Motion to Dismiss, Northwest argues that the Court does not have jurisdiction over the instant dispute, because under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., the dispute is a minor dispute that must be submitted to the system board for resolution. AMFA of course disagrees, characterizing the dispute as a major dispute that must be resolved by the Court.

The Supreme Court has made clear that if an employer's claim of authority to make a change is "arguably justified" by the terms of the parties' CBA, then the dispute is a minor dispute that must be submitted to the system board. Consol. Rail Corp. v. Ry. Labor Executives Ass'n, 491 U.S. 299, 310 (1989). Although the Court cautioned against blindly adopting the characterization of the dispute put forward by the pleadings, id. at 306, in this case even AMFA's characterization leads to the conclusion that Northwest's claim is "arguably justified" by the CBA. In challenging the termination of the four employees, AMFA stated that it was challenging whether Northwest had just cause, under the terms of the CBA, to terminate the employees. Thus, AMFA asserted an existing contractual right and did not contend that Northwest was somehow acting outside the scope of the parties'

agreement. See id. at 305 (party categorizes the dispute "when it chooses whether to assert an existing contractual right").

The CBA explicitly allows Northwest to promulgate "rules, regulations, and orders . . . which are not in conflict with the provisions of [the CBA] or applicable state or federal law." (CBA Art. 2(B).) AMFA asserts that by using the criminal history checks for purposes other than to determine SIDA access, Northwest is violating federal law. Thus, according to AMFA, the dispute is somehow taken out of the realm of the CBA and is a major dispute that must be heard by the Court. AMFA essentially argues that Northwest is violating the CBA by violating federal law. Thus, AMFA is challenging Northwest's authority under the CBA, and the resolution of this challenge will depend at least in part on an interpretation of the CBA. See Elgin, J. & E.R. Co. v. Burley, 325 U.S. 711, 723 (1945) (minor dispute "relates either to the meaning or proper application of a particular provision with reference to a specific situation"). Thus, even as AMFA characterizes the dispute, it is a minor dispute over which the Court has no jurisdiction.

Finally, even if the dispute is a major dispute, a TRO is not appropriate. There is simply no irreparable harm to AMFA if Northwest is allowed to continue to use criminal history checks in the way it has been using them. See Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc) (injunction may not issue without a showing of irreparable harm); Dataphase, 640 F.2d at 114 n.9 ("absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary

injunction"). As Northwest points out, all employees allegedly harmed by Northwest have the opportunity to grieve their termination, and, at most, these employees might lose some back pay, which is certainly not irreparable harm. If Northwest is enjoined from pursuing the background checks, however, there is a real danger that Northwest will be unable to comply with the federal mandate to complete the checks by December 6, 2002. Moreover, there is a danger to the public if employees who are in fact dangerous are allowed access to SIDA. Thus, regardless of the nature of the dispute, a TRO will not issue.

**CONCLUSION**

Because the Court lacks jurisdiction over this matter, it must be dismissed. Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (Clerk Doc. No. 9) is **GRANTED**; and
2. Plaintiff's Motion for Temporary Restraining Order (Clerk Doc. No. 2) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 16, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.